Thomas J. Polis - SBN 119326
**POLIS & ASSOCIATES,**
**A PROFESSIONAL LAW CORPORATION**
19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612-2433
Telephone: (949) 862-0040
Facsimile:   (949) 862-0041
E-mail:  tom@polis-law.com

Counsel for Debtor/Debtor-In-Possession,
R Star Restaurants, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | ) Case No.  8:10-bk-12892-TA |
| | ) |
| R Star Restaurants, Inc, dba Lone Star | ) **Chapter 11** |
| Steakhouse, dba Lone Start Steakhouse & | ) |
| Saloon, | ) **MOTION FOR ORDER RE: AUTHORIZE THE** |
| | ) **DEBTOR TO SELL SUBSTANTIALLY ALL OF** |
| **Debtor and** | ) **ITS ASSETS PURSUANT TO SECTION 363** |
| **Debtor-In-Possession.** | ) **TO  THE  DEBTOR'S  FRANCHISOR/** |
| | ) **LICENSOR, LONE STAR STEAKHOUSE AND** |
| | ) **SALOON  OF  CALIFORNIA  AND** |
| | ) **COMPROMISE  OF  CLAIMS  AND** |
| | ) **CONTROVERSIES PURSUANT TO RULE** |
| | ) **9019  OF  THE  FEDERAL  RULES  OF** |
| | ) **B A N K R U P T C Y   P R O C E D U R E ;** |
| | ) **DECLARATION IN SUPPORT THEREOF** |
| | ) |
| | ) **Hearing:** |
| | ) **Date:  June 2, 2010** |
| | ) **Time:  10:00 a.m.** |
| | ) **Ctrm: 5B, 5th Floor** |
| | ) **Reagan Federal Building & Courthouse** |
| | ) **411 West Fourth Street** |
| | ) **Santa Ana, California 92701** |

TO  THE  HONORABLE  THEODOR  C.  ALBERT,  UNITED  STATES  BANKRUPTCY

JUDGE; OFFICE OF THE UNITED STATES TRUSTEE, SANTA ANA DIVISION; AND ALL

OTHER PARTIES ENTITLED TO NOTICE:

PLEASE TAKE NOTICE at the above-captioned time and place, Debtor/Debtor-In-

Possession, R Star Restaurants, Inc. ("Debtor") will move the Honorable Theodor C. Albert, United

States Bankruptcy Judge for an *Order Re: Authorize The Debtor To Sell Substantially All of Its*

*Assets Pursuant To Section 363 TO The Debtor's Franchisor/Licensor, Lone Star Steakhouse an*

*Saloon of California And Compromise of Claims And Controversies Pursuant to Rule 9019 of The*

*Federal Rules of Bankruptcy Procedure* ("*Sale/Compromise Motion*").    The Debtor's

*Sale/Compromise Motion* is based on the *Motion* and Declaration testimony of the Debtor's

President, Gregg Rotcher.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

<u>**INTRODUCTION**</u>

After extensive negotiations, engaged in at arms'-length and in good faith, Debtor R Star

Restaurants, Inc. ("Debtor"), Debtor's Insiders Gregg and Melinda Rotcher (" Rotchers"), and Lone

Star Steakhouse and Saloon of California, Inc. and various of its affiliates ("Lone Star") have

executed the Asset Purchase and Settlement Agreement (the "Agreement"),[1] a true and correct

copy of the Agreement is attached hereto as ***Exhibit "A"***.    The Agreement, subject to approval

by this Court, will (i) resolve all pre-petition claims between the Debtors, Lone Star, and the

Rotchers, (ii) resolve Lone Star's pending motions seeking to compel the Debtor to cease

operations under the Lone Star brand name and to evict the Debtor from the leases that Lone Star

terminated pre-petition, and (iii) sell a portion of the Debtor's business to Lone Star in exchange

for fair consideration, thereby preserving a substantial portion of the businesses, preventing

unnecessary job losses, and maximizing the value of the Debtor's bankruptcy estate.    The Debtor

now moves this Court for an order approving the Agreement and the relief and terms provided for

therein.[2]

The Agreement proposes a resolution of Lone Star's pre-petition claims and causes of

action against the Debtor, with an immediate benefit to the Debtor's estate.    Specifically, terms

of the Agreement allow Lone Star to acquire the Debtor's assets and leases for two to five of its

restaurants in exchange for a release of Lone Star's large pre-petition claims and cash

consideration of (i) $40,000.00, (ii) as consideration for alcohol licenses, $16,000.00 per

restaurant acquired, (iii) invoice price of food and beverage inventory being transferred, and (iv)

any amounts needed to assume and assign any applicable leases.

---

[1] Capitalized terms not otherwise defined herein shall carry the meaning ascribed to them in the Agreement.

[2] All interested parties are encouraged to read the Agreement in its entirety.

F:\R Star\P\SaleMtn 051210.wpd

1    The Debtor submits that the sale and compromise embodied in the Agreement is

2  reasonable, appropriate, and within the Debtor's exercise of sound business judgment and

3  constitutes the best opportunity under existing circumstances to reasonably resolve the pending

4  claims and litigation.  Lone Star has taken the position that it terminated the Debtor's license to

5  use Lone Star's brands, recipes, trademarks, and other intellectual property (the "Lone Star IP")

6  prior to the Petition Date, and has filed a motion to compel the Debtor to cease using the Lone

7  Star IP.  Furthermore, Lone Star has taken the position that it terminated the Debtor's leases on

8  two restaurants prior to the Petition Date, and has prepared but not yet filed a motion seeking

9  relief from the automatic stay to initiate an unlawful detainer action against the Debtor.  Lone

10  Star's positions on these pre-petition terminations appear to have merit, and if Lone Star is correct

11  then the estate does not have any continuing rights to use the Lone Star IP and the terminated

12  restaurant leases.

13    Termination aside, Lone Star may have the right to compel the Debtor to reject or assume

14  the leases and license agreements.  Given the arrearages the Debtor owes under the leases and

15  license agreements, assumption does not appear to be an option.

16    Thus, the estate's right to use the restaurants leased from Lone Star and the Lone Star IP

17  is temporary at best.  Without the Lone Star IP, the Debtor cannot function and will be forced to

18  convert to Chapter 7, leaving the creditors with no chance at recovery and the Debtor's employees

19  without jobs.  Given these circumstances, the Agreement is in the best interests of the Debtor, its

20  estate, and its creditors, and should be approved by the Court.

21  II.

22  **JURISDICTION AND VENUE**

23    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This

24  matter relates to the administration of the Debtor's bankruptcy estates and is accordingly a core

25  matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), (M), (N), and (O).  Venue of the captioned

26  cases is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the

27  relief requested herein are 11 U.S.C. §§ 105 and 363(b) and Federal Rules of Bankruptcy

28  Procedure 2002, 6004, 9006, and 9019.

III.

**STATEMENT OF FACTS IN SUPPORT OF MOTION**

**A.    PRE-PETITION EVENTS**

The Debtor operates five Lone Star Steakhouse restaurants in Southern California.  These restaurants are located in Corona, California ( "Corona Restaurant"), Lake Elsinore, California (the "Lake Elsinore Restaurant"), Laguna Hills, California (the "Laguna Hills Restaurant"),  Long Beach, California (the "Long Beach Restaurant"), and Tustin, California (the "Tustin Restaurant").  Lone Star subleased the Laguna Hills, Long Beach, and Tustin Restaurants to the Debtor, and also allowed the Debtor to use the Lone Star IP at all five restaurants pursuant to license agreements for those locations (the "License Agreements").

Prior to the Debtor filing its bankruptcy petition on March 8, 2010 (the "Petition Date"), the Debtor fell behind under the leases for the Laguna Hills, Long Beach, and Tustin Restaurants and under the License Agreements.  The unpaid past-due amount owed to Lone Star under the License Agreement alone exceeds $450,000.00, and Lone Star has taken the position that the Debtor's default under the License Agreement constituted a default under the leases for the Laguna Hills, Long Beach, and Tustin Restaurants as well.

Lone Star, the Debtor, and the ultimate lessor for the Long Beach Restaurant executed an agreement on February 26, 2010 providing that the sublease for that restaurant between Lone Star and the Debtor was terminated effective May 15, 2010.  Lone Star also asserts that it terminated the leases for the Laguna Hills and Tustin Restaurants effective March 6, 2010 based on the Debtor's defaults.  Finally, Lone Star asserts that it terminated the License Agreement on February 23, 2010, which provided that the Debtor's right to use the Lone Star IP would cease on March 9, 2010.

**B.    POST-PETITION EVENTS**

Subsequent to the Petition Date, Lone Star filed a *Motion Of LSF5 Cactus Franchisor, LLC And Lone Star Steakhouse & Saloon, Inc. For An Order Compelling The Debtor To Cease Using Lone Star Intellectual Property*, Docket No. 12 (the "Motion to Compel").  The Motion to Compel argues that the License Agreements were irrevocably terminated pre-petition and that the Court should issue an order prohibiting the Debtor from continuing to use the Lone Star IP.

F:\R Star\P\SaleMtn 051210.wpd

4

1       The Debtor, reserving in full its rights in the event that the Court denies this *Motion*, and

2   without making any admissions, and with a believes that the *Motion to Compel* has substantial

3   merit under applicable bankruptcy law.  The termination of the License Agreements may very well

4   have been valid—Lone Star did provide unequivocal written notice terminating the License

5   Agreements prior to the Petition Date.  Given the Debtor's long standing unpaid debt owed under

6   the License Agreements, which totaled more than $375,000.00 at the time of termination, this

7   termination appears to be valid under the License Agreements.  Given the size of the arrearages,

8   the termination does not appear to be reversible under California anti-forfeiture law, and it appears

9   that the Bankruptcy Code does not provide any mechanism for reversing a contract termination

10  accomplished prior to the Petition Date.  *See, e.g., In re 421 Willow Corp.*, No. MISC. 03-182,

11  2003 WL 22318022, *4 (E.D. Pa. Oct. 09, 2003) ("[L]awful prepetition termination of a contract or

12  lease agreement does not constitute a transfer[;] [. . . ] an overbroad reading of the 'transfer'

13  language within the meaning of Bankruptcy Code Sections 547 and 548 would conflict with the

14  specific language of Bankruptcy Code Section 365.") (citing cases).  Lone Star has also indicated

15  that it has prepared a motion to for relief from the automatic stay that will seek to have the stay

16  modified so Lone Star can commence unlawful detainer actions against the Debtor regarding the

17  Laguna Hills, Long Beach, and Tustin Restaurants.  Lone Star will take the position that these

18  leases were also validly terminated prior to the Petition Date.

19      The loss of the ability to use the Lone Star IP in itself will force the Debtor to cease

20  operations and convert this bankruptcy case to Chapter 7.  Given Lone Star's strong position, the

21  Debtor determined that the best option for preserving the value of its estate was to try to strike a

22  deal with Lone Star.  The Debtor engaged in extensive, arms'-length negotiations with Lone Star,

23  and struck the bargain set forth in the Agreement.  While the consideration being provided by

24  Lone Star in the Agreement is not exactly generous, the Debtor feels that the Agreement is fair

25  and, more importantly, the best option for its estate, its employees, and its creditors.

26  / / /

27  / / /

28  / / /

**IV.**

**PROPOSED SALE AND COMPROMISE**

In conjunction with the parties' settlement discussions, the Debtor has analyzed the facts and issues with respect to: (a) the Debtor's rights to the Lone Star IP; (b) the Debtor's rights to the Laguna Hills, Long Beach, and Tustin Restaurants; (c) the Debtor's potential Chapter 11 and non-bankruptcy causes of action against Lone Star; (d) the pre- and post-petition claims of Lone Star against the estate; (e) the impact on the estate if the Debtor can no longer use the Lone Star IP; and (f) the potential benefit to the Debtor' estate if the Agreement is consummated.

Based on the Debtor's investigation and understanding of the facts, and the reasons and legal authorities cited herein, the Debtor submits that the Agreement and the relief and terms provided for therein, which are summarized below, are in the best interests of the Debtor's estate and thus should be approved:

1.  Cash payments by Lone Star in the amount of $40,000.00 to the estate. *Agreement*, § 2.01(b).

2.  $16,000.00 per acquired restaurant as consideration for the alcohol licenses and other permits being transferred. *Id*. § 2.01(d).

3.  Assumption of future liabilities relating to assigned contracts, assigned permits, and transferred employees. *Id*. §§ 2.01(c) & 1.03.

4.  Payment at invoice price for food and beverage inventory being transferred. *Id*. § 2.01(c).

5.  Payment for any amounts required to effectuate the transfers of any leases to Lone Star. *Id*. § 2.01(e).

6.  Waiver and release of substantial pre-petition claims by Lone Star against the Debtor's estate.

The Agreement also provides that the Debtor's President, Gregg Rotcher, will sign a six-month employment agreement with Lone Star, and that his wife Melinda Rotcher will sign a non-compete agreement with Lone Star. These ancillary agreements will be provided in exchange for a conditional release of certain guaranty obligations the Rotchers' owe Lone Star. Lone Star wants to have the services of Mr. Rotcher available during this sensitive transition period in order to preserve the Debtor and its cast of employees as a going concern to the fullest extent possible.

/ / /

## V.

## BASIS FOR RELIEF REQUESTED

Section 105 of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  Section 363(b) of the Bankruptcy Code provides that the Debtor "may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Section 365 of the Bankruptcy Code provides that the Debtor may assume and assign contracts under certain conditions.  Federal Rule of Bankruptcy Procedure 9019(a) authorizes the Court, after a hearing on such notice as the Court directs, to approve a compromise or a settlement.  Fed. R. Civ. P. 9019(a).  Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, 6006, and 9006 govern notice requirements of this *Motion* and authorize the Court to waive other and further notice of any hearing thereon.  Fed. R. Bankr. P. 2002, 6004, 6006, and 9006.  These provisions provide the basis for the relief requested in the *Motion,* and are analyzed below.

**A.    THE PROPOSED COMPROMISE TO BE REASONABLE UNDER THE FACTS AND SHOULD BE APPROVED PURSUANT TO RULE 9019**

By its own terms, Fed. R. Bankr. P. 9019 commits the approval of a compromise to the sound discretion of this Court.  Neither Fed. R. Bankr. P. 9019 nor any other section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval.  The standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness under the circumstances and fairness to creditors.  *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 390, 424 (1968) (court must make an informed and independent decision of complexity, expense and likely duration of litigation, including potential rewards and probability of success).  The court need not "conclusively determine claims subject to compromise, nor find that the settlement constitutes the best result obtainable."  *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2d Cir.) *cert. denied*, 464 U.S. 822 (1983)).  Similarly, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose

of compromising the claim.'" *In re Telesphere Communications*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (quoting *In re Energy Coop., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989). All that is required is for the court to "canvass the issues to determine the settlement does not fall 'below the lowest point in the range of reasonableness.'" *Apex Oil*, 92 B.R. at 867.

The Ninth Circuit Court of Appeals has recognized that "the bankruptcy court has great latitude in approving settlements," which are favored in bankruptcy. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *Case v. LA Lumber Prods. Co.*, 308 U.S. 106 (1939). In exercising its discretion, the court should give considerable weight to the trustee's informed judgment that a compromise is fair and equitable under the circumstances. *Anderson*, 390 U.S. at 444. Similarly, application of a trustee's sound business judgment in the use, sale or lease of property of the estate is subject to great judicial deference. *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991), *aff'd in part, rev'd in part*, 983 F.2d 336 (1st Cir. 1993); *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982). The application of the business judgment test affords a trustee discretion in balancing the costs and benefits of administering or disposing of estate assets according to the needs of the estate. *See In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Accordingly, it is well within this Court's statutory and decisional authority to find that the proposed compromise is within the reasonable range of settlement and a sounds exercise of the Trustee's informed business judgment. In assessing reasonableness of the Trustee's proposed compromise, the Court should specifically consider four factors: (i) the probability of the Debtor's success with respect to the litigation and related claims; (ii) the complexity of the litigation and related claims involved, and the expense, inconvenience and delay necessarily attending it; (iii) the likely difficulty in collection; and (iv) the paramount interest of creditors. *In re A&C Properties, Inc.*, 784 F.2d 1377, 1381 (9th Cir. 1986). Each of these factors militate in favor of approving the Agreement.

First, the proposed compromise represents a favorable litigation outcome for the Debtor's estate. In view of the evidence and factors presented to the Debtor to date, there is an extremely high degree of risk and uncertainty as to whether the Debtor could continue to operate its

business using the Lone Star IP without Lone Star's consent.  Lease terminations aside, the loss of the ability to use the Lone Star IP would force the Debtor to cease operating at least until the Debtor re-brands itself.  Re-branding is not an option since it would be prohibitively expensive and result in a substantial loss of income.  Furthermore, the Debtor's resources are limited and litigation against Lone Star would be expensive.  This weighs in favor of settling Lone Star's claims against the Debtor.

The Debtor does not have the financial means to cure its defaults under the License Agreements, which is of course a necessary condition for assuming the License Agreements.  *See* 11 U.S.C. § 365(b).  Even if the Debtor could come up with the $375,000+ needed to cure its defaults under the License Agreement, the Debtor would not be able to assign the License Agreements without Lone Star's consent.  *See, e.g., In re N.C.P. Marketing Group, Inc.*, 337 B.R. 230, 237 (D. Nev. 2005) (holding that "trademarks are personal and non-assignable without the consent of the licensor").  Thus, assignment of the License Agreements as part of a more lucrative § 363 sale is not an option.

Reorganizing the Debtor itself would be more problematic.  The I.R.S. has asserted a $195,000.00 priority claim against the Debtor.  *See* Claim No. 1.  Various vendors already asserted reclamation demands.  *See Reclamation Demand of Sysco Food Services of Los Angeles, Inc.*, Docket No. 8 (asserting a $218,293.66 reclamation demand).  These vendors may be entitled to administrative claims under § 503(b)(9) of the Bankruptcy Code.  A secured lender of the Debtor has refused to consent to the Debtor's use of cash collateral.  *See Notice of Non-Consent to Use of Cash Collateral and Demand for Segregation and Accounting of Cash Collateral Pursuant to 11 U.S.C. 363(c)*, filed by Creditor General Electric Capital Corporation, Docket No. 10.  Given these large priority claims, and the resistance of major creditors, the Debtor is uncertain of its ability to reorganize itself under through the Chapter 11 plan process.  Since a different § 363 sale process is not an option given Lone Star's right to prevent the assignment of the License Agreements, and since a Chapter 11 reorganization is unlikely to succeed given the state of the estate, the Debtor believes that the Agreement is the only realistic option for the estate.  This weighs in favor of settling Lone Star's claims against the estate.

1        The Debtor does not believe it has serious counterclaims against Lone Star.  The evidence

2   will show that Lone Star delayed termination for more than a year, and was owed more than

3   $375,000.00 at the time it terminated the License Agreements.  This weighs against arguing that

4   the termination was unlawful.  Lone Star did not exercise control over the Debtor and cannot be

5   blamed for the Debtor's current economic situation.  The Debtor has never alleged and does not

6   believe that Lone Star has breached any contractual or other duties owed to the Debtor.  Also, the

7   Debtor does not believe that it has any Chapter 5 causes of action that can be asserted against

8   Lone Star because Lone Star did not receive significant transfers from the Debtor during the

9   preference period under § 547, and any transfers that Lone Star received prior to that were made

10  for reasonably equivalent value.  Furthermore, such litigation would be prohibitively expensive,

11  given the estate's limited resources.  These facts weigh in favor of settling the Debtor's claims

12  against Lone Star.

13  **B.**      **T**HE SALE OF THE **D**EBTOR'S ASSETS IS APPROPRIATE UNDER **§ 363**

14       As with proposals to settle estate causes of action, bankruptcy courts review proposals to

15  sell estate assets under the business justification standard.  *In re Ernst Home Center, Inc.*, 209

16  B.R. 974, 979 (Bankr. W.D. Wash. 1997) ("The Court may approve the [sale] if [the debtor] has

17  established some articulated business justification for the transaction.").

18       The consideration being paid by Lone Star for the assets being acquired is fair.  .  Lone

19  Star's consideration will be increased in the amount of the invoice price paid by the Debtor for food

20  and beverage inventory being transferred to the Debtor.  *Id*. § 2.01(c).  Lone Star is paying

21  approximate fair market value—$16,000 per restaurant acquired—for the Debtor's liquor licenses.

22  *Id*. § 2.01(d).  It is likely that Lone Star will not be acquiring any of the Debtor's furniture, fixtures,

23  or equipment that is subject to any liens, claims, or encumbrances.  *See* Agreement, § 1.05.

24  Since most of the Debtor's furniture, fixtures, and equipment are encumbered, that property will

25  not be transferred as under the Agreement.[1]  Thus, the personal property being transferred to

26  Lone Star in exchange for $40,000.00 mostly consists of merchandise, uniforms, miscellaneous

27  _____

28      [1] Lone Star does retain the right to negotiate with the parties holding the FF&E for the acquisition of the FF&E.
*See* Agreement, § 1.05. Considering that these parties are all undersecured, these assets have negligible value to
the Debtor's estate.

F:\R Star\P\SaleMtn 051210.wpd

1  supplies, records, warranties and potentially other contract rights, software, telephone numbers,

2  and domain names.   The Debtor does not believe that it could obtain a better recovery by

3  attempting to liquidate these assets in a piecemeal fashion.

4  　　　　Moreover, the Debtor would note that a liquidation of its assets and cessation of its

5  business would increase the estate's liabilities dramatically.  Rejection damages relating to leases

6  and other executory contracts would be incurred.  So would administrative expenses arising from

7  job losses.  Thus, a going concern sale to Lone Star is preferable to liquidation.

8  　　　　Perhaps these assets could be sold for a higher price if the Debtor could market and sell

9  its business as a going concern to other parties, but this is not possible for the reasons already

10  discussed.  Lone Star likely has the right to prevent the Lone Star IP from being used by the

11  Debtor or transferred to another buyer.  Without the ability to use the Lone Star IP, the Debtor will

12  face a prolonged and expensive cessation of business.  Without the ability to sell the Lone Star

13  IP, the Debtor cannot market itself as a going concern, let alone sell itself as one.  Thus, Debtor's

14  decision to move forward with a sale to Lone Star is an exercise of its sound business judgment,

15  and the best option for the Debtor's estate and creditors.

16  C.　　**SALE OF ACQUIRED ASSETS FREE AND CLEAR COMPLIES WITH § 363(f)**

17  　　　　The Debtor proposes selling the Acquired Assets free and clear of all liens, claims,

18  encumbrances, and interests pursuant to § 363(f) of the Bankruptcy Code.   General Electric

19  Capital Corp. asserts a security interest in various Acquired Assets, including furniture, fixtures,

20  and equipment and inventory.  Another creditor has filed a proof of claim asserting a security

21  interest in certain enumerated equipment.  *See* Claim No. 3-1.

22  　　　　The Debtor believes that the Acquired Assets can be transferred free and clear of these

23  security interests under § 363(f).  Without the consent of the applicable secured creditor, the

24  Debtor is not selling any furniture, fixtures, and equipment subject to liens, claims, or

25  encumbrances pursuant to § 1.05 of the Agreement.[2]  Furthermore, the Debtor is selling inventory

26

27  _____

28  　　　　[2] To the extent Lone Star reaches an agreement with such secured creditors, the Debtor will cooperate with any transfer of the FF&E.

F:\R Star\P\SaleMtn 051210.wpd

11

1  for invoice price and proposes providing GECC or any creditor who can establish a lien on the

2  Acquired Assets with a replacement lien on the proceeds of such assets.

3      The Debtor does not believe that any other parties have interests in any of the Acquired

4  Assets.  However, the Debtor is providing all known creditors with notice of the proposed sale of

5  the Acquired Assets free and clear.  Any parties who fail to object to the *Sale Motion* or otherwise

6  assert an interest in the Acquired Assets prior to the conclusion of the hearing on the *Sale Motion*

7  should be deemed to have consented to the sale of the Acquired Assets free and clear of such

8  liens.  *See* 11 U.S.C. § 363(f)(2) (providing that assets may be sold free and clear of liens by

9  consent); *see, e.g., In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (finding that

10  purported secured creditor may be deemed to have consented to the sale for purposes of

11  § 363(f)(2)) (citing *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988); *In re Shary*, 152 B.R. 724 (Bankr. N.D.

12  Ohio 1993); *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985)).

13  **D.    TRANSFER OF PERMITS, ACQUIRED CONTRACT, SOFTWARE, AND OTHER ACQUIRED ASSETS**

14  **COMPLIES WITH SECTION 365**

15      The Agreement does propose to transfer certain Acquired Contracts, Permits, Warranties,

16  and Software.  *See* Agreement, § 2.01(e), (f), (g), and (i).  The transfer or assignment of these

17  contracts, rights, licenses, et cetera may implicate § 365 of the Bankruptcy Code.  However, the

18  Agreement provides that if § 363 or § 365 of the Bankruptcy Code would prevent such transfer,

19  then that asset shall not be transferred.  *See* Agreement, § 1.08.  Thus, the proposed sale and

20  transfer does not violate § 365.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**VI.**

2

**CONCLUSION**

3        For the reasons and upon the authorities cited herein, the Debtor requests that the

4  proposed compromise embodied in the Agreement be approved by the Court, along with such

5  other and further relief as the Court may find appropriate and just under the circumstances.

6  **DATED: MAY 12, 2010**              **POLIS & ASSOCIATES,**
                                         **A PROFESSIONAL LAW CORPORATION**
7                                        **By:      /s/ Thomas J. Polis**
                                         **Thomas J. Polis, Esq.**
8                                        **Counsel for Debtor/Debtor-In-Possession,**
                                         **R   Star   Restaurants,   Inc.   dba   Lone   Star**
9                                        **Steakhouse, dba Lone Star Steakhouse & Saloon**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F:\R Star\P\SaleMtn 051210.wpd

1

## **DECLARATION OF GREGG H. ROTCHER**

2      I, Gregg H. Rotcher, declare as follows:

3      1.      I am the President of R Star Restaurants, Inc., Case No. 8:10-bk-12892-TA

4   ("Debtor") presently pending in the above-captioned Court.  Each of the facts contained in this

5   declaration is based upon my personal knowledge and, if called as a witness to do so, I could

6   competently testify thereto.

7      2.      I make this declaration in support of the *Motion of Debtor for Authority to Enter*

8   *Asset Purchase and Settlement Agreement with Lone Star Steakhouse & Saloon of California, Inc.*

9   *et al. Pursuant to 11 U.S.C. §§ 105, 36, and 365 and Fed. R. Bankr. P. 9019* ("*Motion*").

10     3.      I have reviewed and discussed these facts set forth in the *Motion* and based upon

11  such review and discussions, including the review of certain of the Debtors' books and records

12  and the papers filed with the Court in these cases, including the Rotcher Declaration, with

13  supporting exhibits, appended to the *Motion*, such factual recitations are true and correct to the

14  best of my knowledge, information, and belief.  Based upon such facts, I believe that it is in the

15  best interests of the Debtor's estate for the Agreement to be approved, for the reasons set forth

16  in the *Motion*, including, without limitation:

17      a.      Consummation of the Agreement includes an immediate benefit to the creditors
           of the Debtors' estates in the form of a $40,000.00 cash, plus $16,000.00 per
18         liquor license transferred, payment for inventory transferred at cost, payment of
           any amount needed to effectuate a lease transfer, and the assumption of various
19         liabilities.

20      b.      Lone Star has also agreed to waive its pre-petition claims and stand-down on its
           proposal to compel the Debtor to cease using the Lone Star IP, which if successful
21         would force the immediate shut-down of the Debtor's operations and the
           conversion of the Debtor's bankruptcy case to Chapter 7.
22
        c.      The merits of Lone Star attempt to force the Debtor to cease using the Lone Star
23         IP appear strong.  Litigation with Lone Star will be protracted.

24      d.      The estate has few, if any, claims against Lone Star that are colorable, and any
           claims lack substantial merit.
25
        e.      The consummation of the Agreement presents the best opportunity to maximize
26         the value of the estate.

27     The negotiations between the Debtor and Lone Star regarding the proposed Agreement

28  were at arms'-length and no collusion was involved.

F:\R Star\P\SaleMtn 051210.wpd

14

1        I declare under penalty of perjury under the law of the United States of America that the

2    foregoing is true and correct.

3        Executed this 12th day of May, 2010 in Corona, California.

4                                             /s/ Gregg H. Rotcher
                                Gregg H. Rotcher

5                                    President

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re: R Star Restaurants, Inc, dba Lone Star Steakhouse, dba Lone Star Steakhouse & Saloon, Debtor(s). | Case No. 8:10-bk-12892-TA |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**POLIS & ASSOCIATES**

**A PROFESSIONAL LAW CORPORATION**

**19800 MacArthur Boulevard, Suite 1000**

**Irvine, California  92612-2433**

A true and correct copy of the foregoing document described **DEBTOR/DEBTOR-IN-POSSESSION'S MOTION FOR ORDER RE: AUTHORIZE THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS PURSUANT TO SECTION 363 TO THE DEBTOR'S FRANCHISOR/ LICENSOR, LONE STAR STEAKHOUSE AND SALOON OF CALIFORNIA AND COMPROMISE OF CLAIMS AND CONTROVERSIES PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 12, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Nancy S. Goldenberg, Chapter 7 Trustee - nancy.goldenberg@usdoj.gov
- Office of the United States Trustee, Santa Ana Division, ustpregion16.sa.ecf@usdoj.gov
- Raffi Khatchadourian, Esq., Hemar, Rousso & Heald, LLP - raffi@hemar-rousso.com
- Eric S. Pezold, Esq., Snell & Wilmer, - epezold@swlaw.com
- Caroline Djang, Esq., Jeffer, Mangels, Butler & Marmaro, LLP - crd@jmbm.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **May 12, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**SERVED VIA GOLDEN STATE OVERNIGHT DELIVERY**
- Honorable Theodor C. Albert, United States Bankruptcy Court, Central District of California
  411 West Fourth Street, Suite 5085, Santa Ana, California 92701-4593
- Andrew Jillson, Esq., Hunton & Williams,LLP, 1445 Ross Avenue, Suite 3700, Dallas, TX 75202

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on          , 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 12, 2010 | Cristina L. Allen | /s/ Cristina L. Allen |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**